UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH H. GUSKY

                Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

**REPORT
and
RECOMMENDATION**

**10-CV-00919 A(F)**

---

APPEARANCES:        LEGAL SERVICES FOR THE ELDERLY, DISABLED OR
                                DISADVANTAGED OF WNY, INC.,
                                Attorneys for Plaintiff
                                ANTHONY SZCZYGIEL, of Counsel
                                237 Main Street
                                Suite 1015
                                Buffalo, New York 14203-2717

                                WILLIAM J. HOCHUL, JR.
                                UNITED STATES ATTORNEY
                                Attorney for Defendant
                                JANE B. WOLFE
                                Assistant United States Attorney
                                Federal Centre
                                138 Delaware Avenue
                                Buffalo, New York 14202


## **JURISDICTION**

This action was referred to the undersigned by Honorable Richard J. Arcara on February 10, 2011. The matter is presently before the court on motions for judgment on the pleadings, filed by Defendant on May 9, 2011 (Doc. No. 6), and by Plaintiff on October 6, 2011 (Doc. No. 8).

## BACKGROUND

Plaintiff Joseph Gusky ("Plaintiff"), seeks review of Defendant's decision denying his request for waiver of recovery of overpayment of Social Security Disability Insurance benefits ("SSDI"), and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Social Security Act ("the Act"). Plaintiff's application for a waiver of recovery of overpayment of disability benefits was denied when Defendant determined that Plaintiff was not without fault (R. 193), and that Plaintiff was therefore not entitled to waiver of recovery under the Act. (R. 193).

## PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on February 20, 1998 (R. 30), was determined to be disabled under the meaning of the Act, and received disability benefits beginning April 1,1995. (R. 30, 43). Plaintiff filed earnings reports with the Social Security Administration ("SSA" or "Administration") on April 19, 1999 (R. 342-44), March 31, 2003 (R. 333-39), and February 12, 2004. (R. 82-88).

On March 22, 2004, the SSA advised Plaintiff that upon review of Plaintiff's earnings records, SSA earnings records, and work information provided to SSA by Plaintiff's employers, SSA had determined that Plaintiff performed substantial work activity beginning October 1998, that Plaintiff's nine month trial work period[1] ended effective February 2000, and that Plaintiff's benefits would be terminated effective March 2003. (R. 48-50). In correspondence dated April 2, 2004, SSA advised Plaintiff

---

[1] A trial work period is a nine-month period during which a disability claimant may attempt to work but still receive benefits. 20 C.F.R. § 404.1592.

that because SSA did not stop Plaintiff's disability checks until April 2004, SSA overpaid Plaintiff $13,854.70 in disability benefits and Plaintiff was responsible to return the overpayment. (R. 54). Plaintiff attended a folder review conference on June 23, 2004 with a representative of the SSA, and told the SSA he believed he should not be responsible to repay SSA the overpayment because he had misinterpreted the SSA rules regarding evaluation of work activity. (R. 58). Plaintiff filed a request for waiver of repayment, and on August 4, 2004, Defendant denied Plaintiff's request for a waiver of repayment determining Plaintiff "did not exercise reasonable care in making sure [Plaintiff] understood rules regarding substantial gainful activity and how SSA would evaluate [Plaintiff's] work [and that] Plaintiff ha[d] the funds available to repay th[e] overpayment." (R. 60).

On September 2, 2004, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (R. 62), and a hearing was held on November 1, 2006, where Plaintiff appeared *pro se* and testified. (R. 156-86). At the hearing, Plaintiff testified he "understood that if earnings were more than a certain amount a month that they would be considered substantial . . . [and that] the nature of substitute teaching and the fact that [Plaintiff] would be basically off in the summer, [caused] a problem of computing an average." (R. 169). On November 14, 2006, the ALJ issued a decision that although Plaintiff was without fault in causing and accepting the overpayment of benefits, Plaintiff's repayment of the benefits would not defeat the purpose of Title II of the Act, or be against equity or good conscience, and therefore a waiver of recovery of the overpayment of benefits was not warranted. (R. 18-21). The ALJ's decision became the final decision when the Appeals Council denied Plaintiff's request for review on

February 23, 2007. (R. 216). Plaintiff filed a civil action in this court on April 25, 2007, *Gusky v. Astrue*, 07-CV-00275A ("Gusky I"). On January 14, 2008, the court, upon stipulation of both parties, Gusky I, Doc. No. 8 ("Gusky I Stipulation"), remanded the case back to the Commissioner for proceedings in accordance with the fourth sentence of 42 U.S.C. § 405(g) ("§ 405(g)")[2] of the Act. (R. 233) ("Order of Remand"). On April 3, 2008, the Appeals Council ("Appeals Council" or "Council") directed the ALJ to further develop the record by providing Plaintiff with the opportunity to submit further evidence and testimony regarding Plaintiff's income and expenses, and to make findings concerning whether Plaintiff was entitled to waiver of recovery of the overpaid benefits. (R. 233-34).

    On July 23, 2008, pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge in Buffalo, New York, at which Plaintiff, represented by Cheryl Kostrewa, a legal assistant with Legal Services for the Elderly, Disabled, or Disadvantaged of W.N.Y., Inc., appeared and testified. (R. 356). On September 25, 2008, the ALJ issued a decision finding that although Plaintiff was without fault in causing and accepting the overpayment of disability benefits, recovery or adjustment of the overpayment would not defeat the purpose of Title II or be against equity and good conscience, and therefore, a waiver of overpayment was not warranted. (R. 204-06). In particular, the ALJ determined Plaintiff's budget used to describe Plaintiff's income and expenses contained several errors or exaggerations, included only the Plaintiff's

---

[2] The fourth sentence of § 405(g) provides "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

earnings from the City of Buffalo for 2004-2007, and did not include earnings information from Plaintiff's other employers or reference the Plaintiff's pension of $386 per month from the State of Virginia. (R. 204). On October 24, 2008, Plaintiff filed exceptions and a request for Appeals Council review (R. 328), and by letter dated August 23, 2010, the Appeals Council advised that upon considering Plaintiff's exceptions to the ALJ's September 25, 2008 decision, the Council intended to find Plaintiff was not without fault and, thus, would not be making any decision regarding Plaintiff's ability to repay and find that Plaintiff was not entitled to a repayment waiver. (R. 194-97)[3].

On September 7, 2010, Plaintiff filed exceptions with the Council that requested the Council not disturb the ALJ's previous without fault determination, and that the Council reconsider the ALJ's determination Plaintiff was not entitled to a waiver of recovery of benefits. (R. 346). Upon review of Plaintiff's exceptions, on September 10, 2010, the Council determined Plaintiff was not without fault in causing and accepting the overpayment of the disability benefits at issue, and that Plaintiff was therefore responsible for repayment of $13, 854.70 in overpaid benefits. (R. 193). This action followed on November 15, 2010, with Plaintiff alleging that the Council's April 3, 2008 Order of Remand limited the Council's authority to review only the issue of Plaintiff's fault, and that Defendant's determination Plaintiff was not without fault in causing or accepting benefits was without support of substantial evidence in the record. (Doc. No. 8).

---

[3] The record contains no explanation for the almost two year delay between Plaintiff's filing of the exceptions on October 24, 2008, and the Appeals Council's August 23, 2010 letter.

## **FACTS**[4]

On April 1, 1995, Plaintiff was determined to be disabled and began to receive disability benefits. (R. 42). On April 19, 1999, Plaintiff completed a Work Activity Report (SSA Form 821-F4), and reported that as of March 31, 1999, Plaintiff had worked as a substitute teacher's aide for the City of Buffalo Public Schools with earnings of $5.15 per hour, three days per week, six hours each day. (R. 342-44). On October 30, 2003, at the request of the SSA, Plaintiff completed a Report of Continuing Disability Interview form (SSA Form 454 BK), and reported work as a youth leader for the Town Boys and Girls Club [sic] for the period of January 2000 until December 2001, with earnings of $6.00 per hour three days a week, and work as a substitute teacher for the City of Buffalo Public Schools from December 2002 until October 2003 with earnings of $98 per day, three days a week. (R. 333-39).

The SSA uses a disability claimant's earnings to establish whether a claimant has engaged in substantial gainful activity ("SGA")[5], and formulate the claimant's trial work period. 20 C.F.R. § 404.1592(e) ("§ 404.1592(e)"). To establish whether a disability claimant has performed services that amount to SGA, the SSA compares the claimant's monthly earnings to SSA earnings guidelines. 20 C.F.R. § 404.1592(a)(3)(ii) ("§ 404.1592(a)(3)(ii)"). If a claimant's monthly earnings exceed the SSA's earnings guidelines, the claimant is found to have engaged in SGA, and a nine-month trial work

---

[4]Taken from the pleadings and the administrative record.

[5]SGA is work activity that involves doing significant physical or mental activities performed for pay or profit. 20 C.F.R. § 404.1572(a)(b).

period begins to run. *Id*. As relevant to this case, the SSA established monthly earnings guidelines of $780 in 2002, $800 in 2003, and $810 in 2004. *See* http://www.ssa.gov/oact/COLA/sga.html (last visited Feb. 23, 2012).

On February 2, 2004, the SSA requested that Plaintiff submit a work activity report, and enclosed along with the correspondence a pamphlet entitled "Working While Disabled . . . How Social Security Can Help" that explained the effects of work on a beneficiary's entitlement to disability benefits. (R. 80).

On February 2, 2004, the SSA mailed a gross wage earnings report to the City of Buffalo, New York requesting information on Plaintiff's earnings for the period from 1999 through 2004 (R. 75-77). A gross wage report by the City of Buffalo Chief Payroll Auditor completed on February 5, 2004 showed Plaintiff's 2002 earnings as a substitute teacher equaled $352 (January); $528 (February); $1,792 (March); $440 (April); $704 (May); $792 (June); $176 (July); $0 (August, September); $637 (October); $819 (November); $1,274 (December). (R. 76). Plaintiff's earnings as a substitute teacher for the City of Buffalo in 2003 equaled $1,243 (January); $665 (February); $1,330 (March); $1,140 (April); $570 (May); $1,140 (June); $0 (July, August); $196 (September); $1,568 (October); $1,470 (November); $1,456 (December). *Id*.

On February 12, 2004, Plaintiff submitted a work activity report to the SSA (R. 82-87), with an explanation that he "computed an average figure for [his] earnings as a substitute teacher aide for the years 1999 through[sic] 2001 . . . [and that his average monthly earnings during 2002] was $750 . . . computed by dividing 10 school months into the annual salary figure." (R. 86-87). Plaintiff reported earnings for his work as a youth leader at the Boys and Girls Club of the Northtowns of WNY, Inc. of $7 per hour,

7

three hours each week, five days per week. (R. 83).

On February 25, 2004, the SSA mailed a gross wage earnings report to the Boys and Girls Clubs of the Northtowns of WNY, Inc. requesting information on Plaintiff's earnings for the period of February 29, 2000 through July 24, 2002. (R. 89-90). A gross wage report from the Boys and Girls Clubs of the Northtowns of WNY, Inc. completed on March 4, 2004, showed Plaintiff's earnings as a youth leader in 2000 equaled $42 (March); $337.50 (July); $607.50 (August); $114 (October); $234 (November); and $102 (December). (R. 89).

Based on this information, on March 22, 2004, the SSA determined Plaintiff's earnings equaled $819 in November 2002, $1,274 (December 2002); $1,243 (January 2003); $665 (February 2003); $1,330 (March 2003); $1,140 (April 2003); $570 (May 2003); $1,140 (June 2003); $196 (September 2003); $1,568 (October 2003); $1,470 (November 2003); $1,456 (December 2003); and $842 (January, February, March 2004) (R. 47), and advised the Plaintiff that Plaintiff's return to work on March 31, 1999, had triggered a nine month trial work for the period between March 1999 and February 2000. (R. 49). The SSA further determined that Plaintiff's reentitlement period ("EPE")[6] was in effect for the period between March 2000 and March 2003 (R. 43), and that the SSA intended to find that Plaintiff's continued SGA during this period resulted in a termination of Plaintiff's disability benefits effective March 2003. (R. 43). Subsequent to the SSA's March 22, 2004 correspondence to Plaintiff advising Plaintiff of SSA's determinations, the SSA continued, apparently in error, to forward benefit payments to

---

[6] The reentitlement period begins the first month after a climant's TWP and ends the last day of the 36th month following the end of the TWP. 20 C.F.R. 1592(a)(3)(b)(2)(ii).

Plaintiff for the period between March 2003 and April 2004.

On April 2, 2004, the SSA advised Plaintiff that $13,854.70 in disability benefits had been overpaid to the Plaintiff for the period between March 2003 and April 2004, and that Plaintiff was responsible for the repayment of the overpaid benefits. (R. 54). On June 23, 2004, Plaintiff attended a folder review conference with a representative of the SSA, and requested a waiver of the repayment of overpaid benefits alleging he was not at fault because he had "misinterpreted [the SSA] rules regarding evaluation of work activity. . . . [and] that he should not be required to use up a substantial portion of his savings in order to repay th[e] amount." (R. 58). On October 18, 2004, SSA mailed a second payment request to Plaintiff that $13,854.70 remained overdue and advised Plaintiff contact the SSA in order to arrange for repayment. (R. 68-69). SSA mailed third request for payment to Plaintiff on November 17, 2004. (R. 71-72).

Based on the following, Defendant's motion for judgment on the pleadings should be GRANTED; Plaintiff's motion seeking judgment on the pleadings on this issue should be DENIED.

## DISCUSSION

### 1. Appeals Council Review

Plaintiff contends that the Council's April 3, 2008 Remand Order that constrained review to the single issue of the Plaintiff's ability to pay deprived the Council of authority to revise its previous "without fault" determination. Plaintiff's Memorandum at 7. The Act provides the Council with the authority to review all of the issues relevant to a claimant's filing of exceptions or appeal. 20 C.F.R. § 404.984(a) ("§ 404.984(a)") provides

> [i]f the Appeals Council assumes jurisdiction of [the] case, any issues relating to

> [the] claim may be considered by the Appeals Council <u>whether</u> <u>or</u> <u>not</u> <u>they</u> <u>were</u> <u>raised</u> in the administrative proceedings <u>leading</u> <u>up</u> <u>to</u> <u>the</u> <u>final</u> <u>decision</u> in [the] case <u>or</u> <u>subsequently</u> <u>considered</u> by the administrative law judge in the administrative proceedings following the court's remand order.

(underlining added).

The Appeals Council may exercise its general authority to review all issues in a case based on a claimant's submission of written exceptions timely filed with the Council. 20 C.F.R. § 404.984(b)(3)("§ 404.984(b)(3)") ("[w]hen you file written exceptions to the decision of the administrative law judge, the Appeals Council may assume jurisdiction at any time."). Where no exceptions are filed, the Council may assume jurisdiction within 60 days of the date of the decision of the ALJ. 20 C.F.R. § 404.984(c) ("§ 404.984(c)")("Any time within 60 days after the date of the decision of the administrative law judge, the Appeals Council may decide to assume jurisdiction of your case even though no written exceptions have been filed.")

In the instant case, by letter dated October 24, 2008, Plaintiff requested that the Council review the ALJ's September 25, 2008 decision. (R. 328). On August 23, 2010, the Council advised Plaintiff that it intended to reverse the ALJ's September 25, 2008 decision's "without fault" determination (R. 194-96), and on September 7, 2010 the Plaintiff filed exceptions with the Council. (R. 346). Thus, upon Plaintiff's filing of the exception on September 7, 2010, the Council properly exercised its plenary authority to review the ALJ's September 25, 2008 decision pursuant to § 404.984(a).

"Where an issue is not precluded by remand order or the judgment of the court in the prior judicial review, that issue may be decided differently . . . on remand if the Commissioner applies the correct legal standard and substantial evidence in the record as a whole supports the decision." *Thompson v. Astrue*, 583 F. Supp.2d 472, 475,

Case 1:10-cv-00919-MAT-LGF   Document 11   Filed 02/28/12   Page 11 of 16

(S.D.N.Y. 2008) (quoting *Lucas v. Astrue* 2008 WL 474286, at *4 (Jan. 29, 2008 D. Kan.). Here, the court's Remand Order directed only that "upon stipulation of both parties, this court remand[s] Plaintiff's case to the Commissioner for further administrative action pursuant to sentence four § 405(g)." Gusky I Stipulation at 1. No where in the Remand Order was the question of Plaintiff's fault addressed or precluded from further review by the Appeals Council. Thus, in accordance with the order of this court's Remand Order, the Council properly exercised its authority under § 404.984(b)(3) to consider all of the issues in Plaintiff's case including whether Plaintiff was at fault for the overpayment at issue.

Plaintiff's motion for judgment on the pleadings challenging the Council's authority to determine whether Plaintiff was at fault in causing the overpayment of benefits should therefore be DENIED.

**2. Fault**

Plaintiff contends that even if the Council had the plenary authority to review the issue of whether Plaintiff was without fault, the Council's determination was not based on substantial evidence. Plaintiff's Memorandum at 7. In particular, Plaintiff contends that the Council's determination Plaintiff was not without fault failed to consider the ALJ's three previous findings that Plaintiff did not accept a payment Plaintiff knew or should have known was incorrect, and thereby failed to afford due weight to the ALJ's previous credibility findings. Plaintiff's Memorandum at 10. This argument is without merit.

A determination of fault for overpayment of benefits depends on whether incorrect payment under section 1834 of the Act resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
> (b) Failure to furnish information which he knew or should have known to be material; or
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507(a)(b)(c)("§ 404.507(a)(b)(c)").

The burden to demonstrate a person is "without fault" is on the recipient of an overpayment of benefits, a requirement that has clearly not been met in this case. *Cruz v. Astrue*, 2009 WL 1835632, at *3 (June 24, 2009 S.D.N.Y.). As discussed, *supra*, at 6-8, the gross wage report submitted to SSA by the City of Buffalo on February 5, 2004 (R. 76), reveals that Plaintiff had more monthly SGA earnings than Plaintiff reported in his October 30, 2003 (R. 336), and February 12, 2004 (R. 86) earnings reports. Plaintiff testified he "understood that if earnings were more than a certain amount a month that they would be considered substantial" (R. 169), yet continued to report his earnings using an averaging method he devised by dividing 10 months into his annual earnings even after being directed by SSA to provide earnings amounts for "any months during which you earned over $200 per month through 12/2000 or over $530 beginning 01/2001." (R. 84). Inasmuch as Plaintiff's correspondence to the SSA (R. 349-51) alleges the SSA directed Plaintiff to calculate "average monthly income," Plaintiff offers no evidence, in accordance with his burden, to support that the SSA provided such a directive, and Plaintiff's argument is therefore without merit. Plaintiff's failure to accurately report his SGA earnings thus constitutes substantial evidence the SSA overpaid benefits to Plaintiff based on an incorrect statement made by the [Plaintiff] which he knew or should have known to be incorrect under § 404.507(a), and that

Plaintiff failed to furnish information which Plaintiff knew or should have known to be material under § 404.507(b). Substantial evidence in this record supports, as the Appeals Council repeatedly and correctly determined, Plaintiff is therefore not without fault with regard to his responsibility to report accurate earnings.

Further, Plaintiff's election not to repay SSA the overpaid benefits, even after Plaintiff received requests for repayment on October 18, 2004 (R. 68), and November 17, 2004 (R. 71), constitute substantial evidence that Plaintiff failed to exercise a high degree of care under which Plaintiff was required to repay the overpaid benefits, and Plaintiff is therefore not without fault under § 404.507(c). *Center v. Schweiker* 704 F.2d 678, 680 (2d Cir. 1983) (neither honest mistake nor failure to receive notice of overpayment is enough to excuse obligation to reimburse benefits). Plaintiff's motion on the pleadings challenging the Appeals Council's finding on the issue of Plaintiff's fault should be DENIED.

**3. Credibility**

A proper evaluation of fault requires "an assessment of the recipient's [or payee's] credibility . . . to distinguish a genuine hard luck story from a fabricated tale." *Beebe v. Astrue,* 2008 WL 5243890, at *4 (Dec. 15, 2008 E.D.N.Y) *citing Califano v. Yamaski,* 442 U.S. 682, 696-97 (1979). Credibility findings necessarily include assessment of a claimant's age, comprehension, memory, and physical and mental condition. *Yankus v. Astrue*, 2008 WL 4190870, at * 8 (Sept. 10, 2008 E.D.N.Y.).

Here, the ALJ's decision on September 25, 2008 concluded that the Plaintiff was not credible in alleging that his repayment of benefits would cause undue hardship. (R. 204). Additionally, on September 10, 2010, the Council issued a finding on Plaintiff's

credibility that Plaintiff "alleg[ed] no limiting physical, mental, educational, or linguistic limitation affecting his professional position." (R. 192). The Council's September 10, 2010 determination that Plaintiff was not without fault included a proper assessment of Plaintiff's credibility supported by substantial evidence, and Plaintiff's motion on the pleadings on the issue of Plaintiff's credibility should be DENIED.

### 4. Waiver of Recovery

Once a claimant is unable to meet the burden of establishing he was without fault with regard to an overpayment of benefits, a waiver of recovery of the overpayment of benefits must be denied. *Langella v. Bush*, 161 Fed. Appx. 140, 142 (2d Cir. 2005) (quoting *Chlieb v. Heckler*, 777 F.2d 842, 846 (2d Cir. 1985)). The Council's determination that Plaintiff was "not without fault" therefore precludes the court's need to determine whether recovery would defeat the purpose of Title II or contrary to equity or good conscience, as those factors come into play only if the claimant is without fault. Plaintiff's motion on the pleadings on the issue of waiver of recovery should be DENIED.

## **CONCLUSION**

Based on the foregoing, Defendant's motion should be GRANTED; Plaintiff's motion should be DENIED. The Clerk of the Court should be directed to close the file.

SO ORDERED.

                    Respectfully submitted,

                    /s/ *Leslie G. Foschio*

                    LESLIE G. FOSCHIO
                    UNITED STATES MAGISTRATE JUDGE

DATED: February 28, 2012
        Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: February 28, 2012
       Buffalo, New York